### Case No. 4,570.
#### EVANS et al. v. RICHMOND.
[Chase, 551; 2 Am. Law T. Rep. U. S. Cts. 101; 2 Balt. Law Trans. 610; 3 Am. Law Rev. 784.][1]
Circuit Court, E. D. Virginia. Nov. Term, 1869.

[1] [Reported by John Gallison, Esq.]

[1] [Reported by Bradley T. Johnson, Esq., and here reprinted by permission. 3 Am. Law Rev. 784, contains only a partial report.]

J. A. Jones and W. T. Joynes, for plaintiffs.
R. T. Daniel and Mr. Steger, for defendant.

CHASE, Circuit Justice. We have not been able to give to this case so full and thorough an examination as we should desire to give it, but it is not probable that our opinion will undergo any change, so we shall proceed to state it briefly.

This is a suit against the city of Richmond upon small notes issued under the orders of the council. These notes were issued in 1861. At that time they were, in the judgment of the court, void notes. We are not able to agree with the counsel who think that, upon a fair construction of the statutes of Virginia, any city within the commonwealth could issue, for circulation as money, notes of any denomination whatever. To hold that, would be, it seems to us, to disregard the whole policy of the state with regard to the issue of unauthorized paper. It would require very strong argument to convince us that any city could issue paper for circulation, in the similitude of bank notes, in contravention of the positive enactments, and of the general policy of the state. These notes, then, as we think, were void at the time they were issued.

Subsequently, and during the war, the legislature of the insurgent state of Virginia, having control of much the larger portion of the territory, passed an act authorizing the issue of these or similar notes. Whether this action can be regarded as valid, having been taken by the legislature of the state under such circumstances that it, could not be recognized by the government of the United States as the lawful government; whether, indeed, this legislature itself can be regarded as valid, admits of very serious question.

In the case of Texas v. Chiles [10 Wall. (77 U. S.) 127] the supreme court held that the acts of a body exercising authority in an insurgent state as a legislature must be regarded by the United States as either valid or not, according to the subject-matter of legislation. That the governor, legislature, and judges of Virginia during the war constituted a de facto government, nobody will question. They exercised complete control over the greater part of the state, proceeding in all the forms of regular organized government, and occupying the capital of the state. It was a de facto government. But then it was a government at war with the United States. and in rebellion against its constitutional authority, and could not be recognized in the national courts as the lawful government; nor could its acts be recognized as lawful acts, so far as these acts had the effect, or were intended to have the effect,

of overcoming the authority of the United States within the limits of Virginia, or of excluding that authority from those limits.

As to regulations concerning marriage, descents, conveyance of property, everything, in short, which belongs to ordinary business and the common transactions of life, its acts may be upheld as valid. But, on the other hand, those acts of any body, corporate or otherwise, which were intended to subvert the authority of the United States, can not be so upheld. This is the distinction laid down by the supreme court in the case of Texas v. Chiles [supra], and if we were disposed to depart from it, we should not be at liberty to do so.

The insurgent government of Virginia especially, must be denied any larger recognition, since there existed at this very time another government within its limits, recognized by the government of the United States as the true and lawful government of the state. If there had been no rebellion, and Virginia had seen fit to change her policy with respect to the issue of small notes, as, for example, if there had been a general suspension of specie payments, and the state, not choosing to relieve the banks from incapacity to issue small notes, had preferred to give that authority to municipal corporations, the right of the state so to act could not be questioned. There would be no doubt on that point; and if, before the adoption of this policy, any particular municipality, as, in this instance, the city of Richmond, had illegally issued notes of this character, it seems impossible to deny that subsequent legislation giving to the city the same authority to issue small notes, which was actually conferred in 1862, must have been held as legalizing the whole issue. Certainly, as it seems to us, suits upon notes of the earlier issues might be maintained against the city with the same legal results as upon those of the later emission. There could be no policy which would invalidate the first notes more than the last. So that if there were no questions in this case other than those arising upon the acts of the legislature and internal state policy, it would be very difficult to avoid the conclusion that the city of Richmond is liable for these notes, and must provide for the payment of them equally with the notes subsequently issued.

The acts of 1862 were intended, as we think, to sanction all the small notes of the cities, within the limits defined by them, without regard to the time of emission.

But all this does not touch the controlling question in this case. That question is: For what purpose were these notes issued? Were they or were they not issued for the purpose of aiding the rebellion against the government of the United States?

The circumstances under which they were put into circulation have been fully detailed by the witnesses. There was a suspension of specie payments, and doubtless one of the objects of the emission was to provide a convenient and safe circulation of notes under five dollars, and for parts of a dollar. And this certainly might be legalized. But another, and as the evidence shows, a very leading object, was to give aid and support to the rebellion. The memorial of the city council of Richmond to the legislature excludes all doubt on this point. The case is brought, therefore, directly within the principles of the decision in the case of Texas v. Chiles, and the court is obliged to hold that no recovery can be had upon the notes. Judgment may be entered for the defendant.